## Case No. 11,825.

### RIGGS et al. v. FRICK.

[Taney, 100; 3 Haz. Reg. U. S. 8.] [1]

Circuit Court, D. Maryland. April Term, 1840.

CUSTOMS DUTIES—HEARTH-RUGS—WORSTED—CREDIT.

1. In an action against the collector of the port of Baltimore, to recover certain duties paid, under protest, upon hearth-rugs, under the act of July 14, 1832 [4 Stat. 583], it being admitted that worsted is made out of wool by combing, and thereby becomes a distinct article, well known in commerce under the denomination of "worsted," and that the hearth-rugs in question were made entirely of worsted, except that linen threads were used to sew together certain portions of them, *held*, that the said rugs were not chargeable with duty as "manufactures of wool," or "of which wool is a component part," under that act.

[Cited in Swayne v. Hager, 37 Fed. 782; Seeberger v. Cahn, 137 U. S. 98, 11 Sup. Ct. 29.]

2. If such rugs were, at the time of the passage of the act of March 2, 1833, c. 944 [4 Stat. 630], well known in commerce by the denomination of "worsted stuff goods," they were entitled to be admitted to entry, free from duty.

3. But if they were not so then known, they were liable to the duty of fifteen per cent. ad valorem, imposed by the 25th clause of the second section of the act of 1832, as a non-enumerated article.

4. The rugs, as worsted goods, were not liable to cash duties, but the importers were entitled to a credit of three and six months, as provided in the fifth section of the act of 1832.

This suit was instituted by the plaintiffs [Samuel Riggs and George Peabody], on the 7th of April, 1840, against [William Frick] the collector of the port of Baltimore, to recover back certain duties upon an importa-

tion of hearth-rugs, paid by them in cash, under protest.

The following admitted statement of facts was filed in the case:

In this case, it is admitted, that the plaintiffs imported into the port of Baltimore, in the ship Lelia, from Liverpool, in the month of March, 1840, —— cases of goods composed of worsted and cotton exclusively; it is also admitted, that worsted is made out of wool by combing, and becomes a distinct article, known in commerce under the denomination of "worsted"; the duty upon which amounted to $1419.10; that the plaintiffs tendered a bond, with approved security, for their whole importation by this vessel, including these goods, at three and six months' credit, and continues to tender the same, but the collector refused, and refuses, to take such bonds, and insisted upon cash being paid, which was paid on the 28th March, under protest. All errors in pleading are waived; this suit being instituted to try whether the duties are cash, or upon a credit.

R. Johnson, for plaintiffs.
N. Williams, Dist. Atty., for defendant.

TANEY, Circuit Justice (charging jury). 1. It is admitted, that the hearth-rugs in question are made entirely of worsted, except that linen threads are used to sew together certain portions of them; and also that worsted is made out of wool by combing, and thereby becomes a distinct article, well known in commerce under the denomination of "worsted"; it is also admitted, that the rugs were charged with duty as manufactures of wool, and that the duty charged was paid by the plaintiffs, with a protest against the legality of the charge. It was decided by the supreme court, in the case of Elliott v. Swartwout, 10 Pet. [35 U. S.] 137, that goods made of worsted are not manufactures of wool, or of which wool is a component part, within the meaning of the words "all other manufactures of wool, or of which wool is a component part," in the second article of the second section of the act of congress of July 14, 1832. This decision is conclusive upon this part of the controversy, and the court therefore instruct the jury that the rugs in question are not chargeable with duty, as manufactures of wool, or of which wool is a component part.

2. If the jury find from the evidence that the hearth-rugs in question were at the time of the passage of the act of congress of March 2, 1833, c. 944, well known in commerce by the denomination of "worsted stuff goods," then they were entitled to entry, free from duty, and the plaintiff is, in that case, entitled to recover back from the defendant the whole amount of the duty he has paid.

3. But if the jury find that the rugs, at the time above mentioned, were not generally known in commerce as "worsted stuff

---

[1] [Reported by James Mason Campbell, Esq., and here reprinted by permission. 3 Haz. Reg. U. S. 8, contains only a partial report.]

goods," then they are liable to the duty of fifteen per cent. ad valorem, imposed by the twenty-fifth clause of the second section of the act of 1832, as a non-enumerated article; and the plaintiffs are entitled to recover back the difference between that amount of duty and the sum paid to the defendant.

It appears from the statement of facts, that there is no controversy in relation to the amount of duties charged in this case; the whole dispute is confined to the time of payment. The collector, under the instructions he has received from Washington, insists that the duties upon these goods were payable in cash, and the importers, the plaintiffs in the case, contend that they were entitled to a credit of three and six months.

The goods in question were composed of worsted and cotton, and the duties have been charged according to the third clause of the second section of the act of July 14, 1832, which imposes a duty upon all manufactures of cotton, or of which cotton shall be a component part. The duties have been thus charged upon the distinction between "worsted stuff goods" and "woollen goods"; for if it was supposed these goods were "a manufacture of wool, or of which wool shall be a component part," in the sense in which these words are used in the act of congress, then the duty charged might have been a much higher one than that exacted; it must have been calculated according to the second clause of the second section, and not according to the third clause.

As both parties admit that the duties have been rightfully charged, as respects the amount, it is unnecessary to examine particularly that part of the subject. The distinction between "worsted goods," and "woollen goods," has been long established and understood in commerce, and has been preserved in the tariff acts of 1832 and 1833. In the first-mentioned act, a great difference was made between the rate of duty imposed upon "worsted stuff goods" and upon "manufactures of wool"; and in the act of 1833, the former were made entirely free, while the latter remained subject to the heavy duty imposed by the act of 1832. In the case of Elliott v. Swartwout, 10 Pet. [35 U. S.] 152, the supreme court recognise this distinction, and remark that, "if, because worsted is made of wool, all manufactures of worsted become woollen manufactures, there would be no propriety in enumerating worsted goods as a distinct class." It follows, from the construction of these acts, as given by the supreme court, that although a part of the fabric now in question was composed of worsted, yet that did not make it a manufacture of which wool is a component part, within the meaning of the act of 1832, and consequently, it was not liable to the duty on woollens; and worsted being free from duty, the collector properly charged them as manufactures of which cotton is a component part.

But the construction thus given to the law by the officers of the government, in relation to the amount of the duties charged, is inconsistent with the claim made for the payment of these duties in cash. If the goods are regarded as manufactures of wool, they must pay the high duty on goods of that description; but they have not been so regarded, and have not been charged with the impost laid upon all manufactures "of which wool is a component part." If they are not considered to be woollen, for the purpose of ascertaining the amount of the duty to be collected, how can they be treated as woollen, in determining the time of payment? They are not liable to the cash duty, unless they are manufactures of wool, or of which wool is a component part; and if they are chargeable with the cotton duties, the importers are entitled to a credit of three and six months.

The description of the goods which are to pay the woollen duties, and of the goods which are to pay cash duties, are precisely the same. The second clause of the second section of the act of 1832, among other things, provides that the duty upon "manufactures of wool, or of which wool shall be a component part," shall be fifty per cent. ad valorem; the fifth section declares that "except wool. manufactures of wool, or of which wool is a component part," when the amount of duties exceeds two hundred dollars, they are payable at the option of the importer, one-half in three and the other half in six months; and the sixth section provides that upon "manufactures of wool, or of which wool is a component part," the duties shall be paid in cash. Now, if these goods are not "manufactures of wool, or of which wool is a component part," within the meaning of the second clause of the second section above quoted, which regulates the amount of duty, how can they be regarded as manufactures of that description, within the meaning of the fifth and sixth sections above mentioned, which regulate the times of payment? The language of all these clauses of the law evidently describes the same goods. And if the goods in question are not chargeable with the woollen duties, it follows that the duties upon them are not payable in cash.

It has been said in the argument, that the sixth section of the act of 1832, in requiring the payment of cash duties on woollen goods, makes no distinction between manufactures of combed wool and of carded wool, and that woollen goods of both descriptions are, therefore, chargeable with the cash duties. If this argument is sound, and this the true construction of the sixth section of the act, the same construction must also be given to the second clause of the second section, and if cash duties are demandable, on the ground that the goods in question are manufactures of which wool is a component part, then the full amount of the woollen duties ought to have been charged at the custom-house.

But when it is admitted, that these fabrics are not chargeable with the woollen duties, how is it possible to subject them to the cash payments, which apply exclusively to the woollen goods?

It is true, as suggested on the part of the United States, that the tariff act of 1832, makes no distinction in the sixth section between articles manufactured of combed wool or of carded wool. But it must be remembered also, that no such distinction is made in the second clause of the second section; and if the omission of this distinction ought to influence the decision in relation to the time of payment, it ought to have had the same effect in fixing the rate of duties.

But neither of these terms, "combed wool" or "carded wool," is used in any part of the law, in describing the manufactures therein mentioned; the distinction taken in the act of congress is between "worsted" and "woollen." Although worsted is made of combed wool, yet we have seen nothing that would justify us in concluding that all manufactures of combed wool are worsted; on the contrary, for aught that appears to the court, there may be a variety of manufactures of combed wool which are not worsted, and which would be liable to the duties imposed on woollens. But the component part of these goods, which has given rise to this controversy, is not only made of combed wool, but is "worsted"; and it must be dealt with accordingly, not only in relation to the amount of duties, but also in the times of payment.

Upon the whole, we think the goods in question were not liable to cash duties; and that the importers are entitled to the credit of three and six months, as provided in the fifth section of the act of 1832 hereinbefore mentioned. And as the amount was paid under protest, and the importers tendered at the time, and now tender, a bond to secure the duties according to law, they are entitled to recover from the collector the amount paid, with interest from the day of payment.